OPINION
{¶ 1} Appellant, Steven Henderson, Sr., appeals from the judgment of the Lake County Common Pleas Court. In the trial court, Henderson entered a plea of no contest and was found guilty of having a weapon under disability, a fourth-degree felony and a violation of R.C. 2923.13(A)(3). In this court, he is challenging the ruling of the trial court on his motion to suppress and his conviction. On review, we conclude that, while the initial traffic stop of Henderson was lawful, the continued detention and interrogation *Page 2 
of Henderson was unreasonable and unlawful. The trial court erred in failing to grant Henderson's motion to suppress. The judgment entry of the trial court is reversed.
 {¶ 2} On the night of August 24, 2005, Henderson was operating a late model Cadillac eastbound on Interstate 90. Officer Jonathan O'Leary of the Madison Village Police Department was following Henderson's vehicle for some distance. O'Leary made an inquiry regarding Henderson's plates through his Mobile Data Terminal (MDT). In response, O'Leary was informed that the plates had expired, that a temporary protection order had been issued against Henderson, that he had "violent tendencies," and that Henderson had a history of prior drug use.
 {¶ 3} O'Leary approached Henderson's vehicle from the passenger side and asked to see Henderson's driver's license. He also asked about a pill bottle located in the car, Henderson's in-car television, and the contents of a brown paper bag. During this time, the officer also learned that Henderson was unemployed and on disability.
 {¶ 4} Multiple air fresheners on the rear-view mirror, a bottle of cologne, and multiple cell phones as well as a considerable amount of jewelry worn by Henderson were also observed by O'Leary. The officer testified that he could smell a really strong smell of air fresheners or cologne and that he observed that the vehicle had air shocks that were filled to the maximum, raising up the back end of the vehicle. Air shocks are useful if one wants to conceal weight in the trunk of the car. O'Leary also testified that, from his training and experience, substances with strong aromas are used to mask the smell of drugs. Finally, he testified that, in his experience, persons who transport drugs often have weapons close at hand. *Page 3 
 {¶ 5} After this initial encounter, Officer O'Leary returned to his vehicle and wrote a citation for expired plates. Upon returning to the Henderson vehicle, the officer asked Henderson to step out of the vehicle and proceed to the rear of the vehicle. He handed the citation to Henderson and told him he was free to go.
 {¶ 6} Thereupon, Officer O'Leary asked Henderson, "[w]ould it be okay if I asked you a question?" Henderson replied that it would be alright with him. The officer then asked him about the temporary protection order, to which Henderson gave a vague answer. Then the officer asked Henderson about his prior drug use, and Henderson replied that he had used crack cocaine when he was younger and that he had been in recovery for a number of years. The officer then asked whether Henderson had any drugs on his person or in the car, to which Henderson replied in the negative. The officer then asked for permission to search inside the vehicle. Henderson replied, "go ahead." It was during a search of the vehicle that O'Leary discovered a .25-calibre handgun.
 {¶ 7} Henderson was indicted by the grand jury on two counts, the first count for carrying a concealed weapon, a fourth-degree felony, in violation of R.C. 2923.12(A)(3); and the second count for having a weapon while under disability, as stated above.
 {¶ 8} Henderson filed a motion to suppress evidence obtained from the search of his vehicle. Following an evidentiary hearing, the trial court denied Henderson's motion to suppress. Henderson thereupon entered a plea of no contest to the charge of having a weapon while under disability. The prosecutor moved for a nolle prosequi of the carrying concealed weapon charge, which was accepted by the court. Henderson was sentenced to 90 days in jail and two years of community control. *Page 4 
 {¶ 9} Henderson filed a timely appeal to this court, raising the following two assignments of error:
 {¶ 10} "[1.] The trial court erred to the prejudice of the defendant-appellant when it overruled his motion to suppress evidence challenging the lawfulness of the continued detention in violation of his due process rights and rights against unreasonable search and seizure as guaranteed by sections 10 and 14, Article I of the Ohio Constitution and the Fourth and Fourteenth Amendments to the United States Constitution.
 {¶ 11} "[2.] The trial court erred to the prejudice of the defendant-appellant when it overruled his motion to suppress challenging evidence found after an invalid consent to search in violation of theFourth Amendment of the United States Constitution and section 14, Article I of the Ohio Constitution."
 {¶ 12} The two assignments of error shall be discussed together in this analysis.
 {¶ 13} "Appellate review of a motion to suppress presents a mixed question of law and fact."[1] The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence.[2] Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard.[3]
 {¶ 14} This case contains similar facts to the case of State v.Hale,[4] recently decided by this court. In the Hale case, the officer stopped a vehicle and noticed the smell of marijuana as he was standing at the passenger side of the vehicle. The passenger was asked to exit the vehicle and, in a patdown search of the passenger, a *Page 5 
handgun was discovered to be on his person. He was convicted of having a weapon while under a disability. The passenger challenged the search by way of a motion to suppress and, on appeal to this court, this court held that the officer "had the authority to search and inquire further based upon his reasonable suspicion that drug activity was in progress."[5]
 {¶ 15} Our legal analysis in the Hale case proceeded as follows:
 {¶ 16} "Our analysis begins with the United States Supreme Court in the case of Whren v. United States:
 {¶ 17} "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of (the Fourth Amendment). * * * An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.' [6]
 {¶ 18} "That court went on to explain that:
 {¶ 19} "`In principle every Fourth Amendment case, since it turns upon a "reasonableness" determination, involves a balancing of all relevant factors. With rare exceptions not applicable here, however, the result of that balancing is not in doubt where the search or seizure is based upon probable cause.'[7] *Page 6 
 {¶ 20} "Within weeks of that decision by the United States Supreme Court, the Supreme Court of Ohio made a like decision with respect to traffic stops in the case of Dayton v. Erickson, in which it adopted the holding of the Sixth Circuit Court of Appeals and approved of the following language:
 {¶ 21} "`"We hold that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate theFourth Amendment. * * * The stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop."'[8]
 {¶ 22} "The Supreme Court of Ohio went on to hold in the Dayton v.Erickson case that:
 {¶ 23} "`Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.'[9]"[10]
 {¶ 24} Thus, applying the foregoing legal principles to the case at hand, Henderson's initial encounter with O'Leary was reasonable, because O'Leary had probable cause to issue Henderson a citation for expired plates. The question is whether the next encounter with Henderson, where O'Leary asked Henderson to exit his vehicle, then asked him to proceed to the rear of his vehicle, where he told *Page 7 
Henderson he was free to go, but where O'Leary began to question him, was reasonable under the circumstances. We conclude that it was not reasonable.
 {¶ 25} "[I]f circumstances attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity, different from the suspected illegal activity that triggered the stop, then the vehicle and the driver may be detained for as long as that new articulable and reasonable suspicion continues * * *."[11]
 {¶ 26} At the time O'Leary asked Henderson to exit his vehicle, he knew from the MTD broadcast that Henderson had a temporary protection order issued against him, that he had violent tendencies, and had prior drug use. He also observed an unemployed individual driving a late model Cadillac, who was wearing a lot of jewelry, had multiple cell phones in his vehicle, used air fresheners and cologne, and had an in-car television. At the time Henderson was asked to exit his vehicle, O'Leary could reasonably have been observing a drug user or a drug dealer. Based upon his training and experience, either of these conclusions based upon his observations would have been reasonable. Further, this court has held that a police office does not need reasonable suspicion to request a driver to exit his vehicle: *Page 8 
 {¶ 27} "`"* * * Once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."'[12] Further, it is `proper for an officer to order a driver to exit a lawfully stopped vehicle, even if there was no reasonable suspicion of criminal activity.'[13]"[14]
 {¶ 28} Officer O'Leary's motive in asking Henderson to exit his vehicle is not controlling.[15] Apart from his motive, O'Leary had probable cause for the initial traffic stop. However, his continued detention and questioning after advising Henderson that he was "free to go" required the existence of reasonable suspicion of ongoing criminal activity.[16] At the time O'Leary told Henderson he was "free to go," there was no ongoing criminal activity that O'Leary could observe. As the Second Appellate District stated in the case of State v.Retherford:
 {¶ 29} "`[T]he mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer "open season" to investigate matters not reasonably within the scope of his suspicion.'"[17] *Page 9 
 {¶ 30} Instead of simply handing Henderson his citation for expired plates and allowing him to go on his way, O'Leary pursued the items that did not make sense to him and continued with his questioning of Henderson until he got Henderson's consent to search his vehicle. Thus, the statement to Henderson that he was "free to go" was ephemeral. A reasonable person would not perceive that he was free to go when the officer moves into the next round of questioning with the lights from his patrol vehicle still flashing.[18]
 {¶ 31} When Henderson told O'Leary to "go ahead" and search the vehicle, the consent to search was already tainted by the lack of specific and articulable facts or a reasonable suspicion of any ongoing criminal activity. O'Leary did not possess such specific and articulable facts as of the time he told Henderson he was "free to go." Therefore, Henderson's consent was not effective to legitimize a detention that was already unlawful and unreasonable. As stated by the Second Appellate District:
 {¶ 32} "[A] `valid consent cannot be given following an illegal detention to which it is strongly connected, and that evidence uncovered as a result of such a search must be suppressed as fruit of the poisonous tree.'"[19]
 {¶ 33} For the foregoing reasons, we conclude that the trial court erred in failing to grant Henderson's motion to suppress. *Page 10 
 {¶ 34} Henderson's assignments of error have merit.
 {¶ 35} The judgment of the trial court is reversed. The matter is hereby remanded to the trial court for further proceedings consistent with this opinion.
COLLEEN MARY OTOOLE, J., concurs,
MARY JANE TRAPP, J., concurs with Concurring Opinion.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.
[2] State v. Guysinger (1993), 86 Ohio App.3d 592, 594.
[3] State v. Thompson (July 27, 2001), 11th Dist. No. 2000-T-0096, 2001 Ohio App. LEXIS 3356, at *5.
[4] State v. Hale, 11th Dist. No. 2004-L-105, 2006-Ohio-133.
[5] Id. at ¶ 41.
[6] (Citations omitted.) Whren v. United States (1996), 517 U.S. 806,809-810.
[7] Id. at 817.
[8] Dayton v. Erickson (1996), 76 Ohio St.3d 3, at 9-10, quotingUnited States v. Ferguson (C.A. 6, 1993), 8 F.3d 385, 388.
[9] Dayton v. Erickson, syllabus.
[10] State v. Hale, supra, at ¶ 25-32.
[11] State v. Myers (1990), 63 Ohio App.3d 765, 771. See, also,State v. Gedeon (1992), 81 Ohio App.3d 617, 618, citing Terry v.Ohio (1968), 392 U.S. 1.
[12] State v. Wojtaszek, 11th Dist. No. 2002-L-016, 2003-Ohio-2105, at ¶ 17, quoting Pennsylvania v. Mimms (1977), 434 U.S. 106, 111.
[13] State v. Jennings (Mar. 3, 2000), 11th Dist. No. 98-T-0196, 2000 Ohio App. LEXIS 800, at *13.
[14] Kirtland Hills v. Strogin, 11th Dist. No. 2005-L-073,2006-Ohio-1450, at ¶ 19.
[15] Dayton v. Erickson, supra, at 9-10.
[16] State v. Helton, 11th Dist. No. 2005-A-0043, 2006-Ohio-2494, at ¶ 26, quoting State v. Myers, supra, at 771.
[17] (Citations omitted.) State v. Retherford (1994),93 Ohio App.3d 586, 600.
[18] See id. at 598.
[19] Id. at 603, quoting State v. Pinder (Dec. 15, 1993), 2d Dist. No. 93 CA 6, 1993 Ohio App. LEXIS 5972, at *13.