[Cite as *State v. Warner*, 2014-Ohio-1874.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | CASE NO. 2013-P-0056 |
| RAYMOND ALAN WARNER, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2013 CR 00246.

Judgment: Reversed and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Kristina Drnjevich,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Dennis Day Lager,* Portage County Public Defender, 449 South Meridian Street, Fourth Floor, Ravenna, OH 44266 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, the state of Ohio, appeals the judgment of the Portage County Court of Common Pleas granting the motion of appellee, Raymond Warner, to suppress all evidence discovered during the inventory search of a vehicle he was driving when stopped by police. At issue is whether appellee had standing to challenge the search. For the reasons that follow, we reverse and remand.

{¶2} Appellee was indicted in a four-count indictment charging him with illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree, in violation of R.C. 2925.041(A)(C); domestic violence, a felony of the fifth degree, in violation of R.C. 2919.25(A); aggravated possession of methamphetamine, a Schedule II controlled substance, a felony of the fifth degree, in violation of R.C. 2925.11(A)(C)(1)(a); and driving under suspension, a misdemeanor of the first degree, in violation R.C. 4510.11(A). After pleading not guilty, appellee filed a motion to suppress all evidence obtained in a warrantless search of an automobile.

{¶3} Officer Dominic Poe of the city of Kent Police Department testified that on March 29, 2013, while on duty in uniform and in a marked cruiser, he was parked across the street from a gas station on South Water Street in Kent. At that time he noticed a 2002 Mercury exit the gas station parking lot onto Hall Street.

{¶4} The Mercury stopped at a stop sign at the intersection of Hall Street and Franklin Avenue and then turned onto Franklin Avenue while failing to signal.

{¶5} Officer Poe began following the Mercury on Hall Street and then onto Franklin Avenue in order to get behind the car. When the Mercury turned onto West Elm Street, Officer Poe activated his overhead lights and siren in order to make a traffic stop due to the driver's turn-signal violation.

{¶6} The Mercury suddenly pulled into a driveway on West Elm Street and stopped. Officer Poe pulled up behind the Mercury in the driveway with his overhead lights still activated. The driver of the Mercury, later identified as appellee, exited the Mercury, turned around, and looked back at Officer Poe. The officer exited his cruiser and yelled at appellee to stop. However, appellee did not stop and instead took off running, leaving the Mercury in the driveway.

{¶7}     Officer Poe said there was another male in the front passenger seat of the Mercury, and, as a result, the officer could not pursue appellee.

{¶8}     Officer Poe ran a registration check of the Mercury and found it was owned by a female, Caitlyn Gray.  Officer Poe learned the vehicle's owner did not live at the property where appellee had parked the Mercury.

{¶9}     Officer Poe called dispatch, providing appellee's description and asking for backup.  When a second officer arrived, Officer Poe got the passenger out of the Mercury.  The passenger gave his name, but said he did not know the name of the driver.  After being detained for a short time, the passenger was released.

{¶10}  Officer Poe said that, because the Mercury was "abandoned," he called dispatch for a tow.  He said he conducted an inventory search at the scene before the car was towed.  As part of the inventory, the officer found methamphetamine in a container on the driver's side of the car.  He also found a purse belonging to the owner of the car, Ms. Gray, in the back seat.

{¶11}  Officer Poe then opened the trunk of the Mercury and discovered contraband inside.  First, he found a digital scale with powder residue in the spare tire area.  He also found a luggage bag containing packs of lithium batteries and appellee's social security card.  Also in the trunk, Officer Poe found a backpack containing aluminum foil, a pipe cutter, and a Powerade bottle containing suspected muriatic acid.

{¶12}  On cross-examination, Officer Poe said he does not know the Kent Police Department's inventory policy.  He said he could not remember when he read it. He said that, although he knew the suppression hearing involved the legality of the inventory search, he did not bring the policy to court with him.  Further, he said that, because he

does not know the department's inventory policy, he cannot say whether he acted in conformity with it.

{¶13} Appellee presented no testimony or other evidence in opposition to Officer Poe's testimony. The officer's testimony was thus undisputed.

{¶14} In closing argument, appellee argued Officer Poe's inventory search of the Mercury was unconstitutional because the officer could not say what the department's policy was or whether he acted in conformity with it. In response, the state argued Officer Poe's inventory search was constitutional because, the state contended, the department has an inventory policy and Officer Poe followed it. In any event, the state argued that appellee lacked standing to file his motion to suppress for two reasons. First, the Mercury was not owned by appellee; he was merely driving it. Second, appellee fled from the Mercury and thus abandoned it. In rebuttal, appellee argued that because he was "in lawful possession" of the Mercury, he was, in effect, the owner of the vehicle and thus had standing.

{¶15} Following the hearing, the trial court entered judgment granting appellee's motion to suppress. In support of its conclusion, the court noted that Officer Poe was unable to articulate the specifics of the Kent Police Department's inventory policy or whether he conformed to that policy in conducting his inventory search. The court did not rule on or even address the state's objection regarding standing.

{¶16} The state appeals, asserting two assignments of error. They allege:

{¶17} "[1.] In error, the trial court found an inventory search of a vehicle unreasonable based on the court's findings of fact that were against the manifest weight of the evidence.

4

**{¶18}** "[2.] The trial court erred to the prejudice of the state in suppressing evidence seized from a vehicle Warner had driven, pursuant to an inventory search, when Warner failed to establish standing to challenge the search."

**{¶19}** Because our ruling on the state's second assignment of error is dispositive of this appeal, we address the assignments of error out of order and first address the second assigned error.

**{¶20}** Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594 (4th Dist.1993). Accepting these facts as true, the appellate court independently determines as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 41 (4th Dist.1993); *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

**{¶21}** Further, Fourth Amendment rights are "personal rights which * * * may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133 (1978).

**{¶22}** "[T]he issue of standing is a threshold determination in analyzing whether a defendant's constitutional rights were violated." *State v. Mock*, 11th Dist. Lake No. 2012-L-066, 2013-Ohio-874, ¶11. "It is rudimentary that one does not have standing to object to a search and seizure of property that he has voluntarily abandoned." *State v. Freeman*, 64 Ohio St.2d 291, 296-297 (1980). "The government bears the burden of establishing, by a preponderance of the evidence, that the defendant abandoned the property at issue." *State v. Dennis*, 182 Ohio App.3d 674, 2009-Ohio-2173, ¶41 (2d

5

Dist.). In support of its holding, the Supreme Court in *Freeman*, cited several cases showing that abandonment can occur in a wide variety of contexts. Specifically, with respect to automobile searches, the Court in *Freeman* cited *United States v. Edwards*, 441 F.2d 749 (5th Cir.1971), in which the Fifth Circuit held that the *search of a car trunk* was lawful when the defendant abandoned the vehicle and fled on foot after a high speed chase with police. As additional support for its holding in *Freeman*, the Supreme Court cited *United States v. Moore*, 459 F.2d 1360 (D.C. Cir.1972), in which the Circuit Court for the District of Columbia held that the warrantless search of a vehicle was lawful when the automobile involved in a robbery was abandoned after the vehicle went out of control.

{¶23} Moreover, the Supreme Court in *Freeman, supra,* provided guidance concerning the determination of whether a defendant's conduct constitutes abandonment, as follows:

{¶24} "Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. *

* * All relevant circumstances existing at the time of the alleged abandonment should be considered. * * * *Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary.* * * * The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to

6

it at the time of the search." (Emphasis added.)  *Id.*, quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973).

**{¶25}** In *Freeman*, the defendant tried to deceive the arresting officer into believing that he would cooperate, following which he suddenly dropped his luggage in a public bus station and fled on foot from the scene of the arrest. The Supreme Court in *Freeman* held that "[a]s far as appellant was concerned the luggage was *bona vacantia* [i.e., unclaimed goods], and, therefore, its search was proper. *Id.* at 298.

**{¶26}** We note that *Freeman* has been repeatedly followed by Ohio courts. *E.g. State v. Gould*, 131 Ohio St.3d 179, 2012-Ohio-71, ¶30.

**{¶27}** The Second District applied *Freeman* in *State v. Mathews*, 2d Dist. Montgomery No. 19120, 2002-Ohio-4970, a case quite similar to the one before us. In *Matthews*, the officer pulled the defendant over for a marked-lanes violation. Before stopping the defendant, the officer learned that the vehicle he was driving was registered to a female. When the officer approached the car, the defendant fled. The officer opened the door and saw two containers of liquid in the vehicle, which the officer suspected was methamphetamine. The Second District held that the defendant lacked standing because he voluntarily abandoned the vehicle. *Id.* at ¶18.  The court held that the defendant's abandonment was voluntary because it was the product of his own decision to run off and leave the car. *Id.* at ¶19.  The court held that the defendant's act of running away from the car "*was a total and unequivocal abandonment of any reasonable expectation of privacy the law might afford him in the vehicle and its contents.*" (Emphasis added.)  *Id.*

**{¶28}** Here, the undisputed testimony is that after Officer Poe activated his overhead lights and siren, appellee pulled the Mercury into a random driveway and

7

stopped the car. Officer Poe immediately pulled into the driveway behind him. As appellee left the Mercury and looked back at Officer Poe, the officer left his cruiser and yelled, "stop." Appellee then fled on foot. In doing so, appellee abandoned the vehicle and its contents. "The legal effect of the abandonment * * * [was] to deprive [appellee] of standing to challenge the subsequent search." *Freeman, supra.*

{¶29} Significantly, appellee does not dispute that he voluntarily abandoned the Mercury or its contents. Nor does he discuss the effect of his abandonment on his standing to challenge the search. Moreover, he does not cite or even attempt to distinguish *Freeman, supra.*

{¶30} Further, we note that appellee does not challenge the legality of the initial stop. Thus, he does not argue an illegal stop rendered his abandonment of the vehicle involuntary. "'When a person disposes of or abandons property in response to *illegal* police conduct, such as an illegal seizure or search, that person is not precluded from challenging the admissibility of the evidence because his act of abandonment is not voluntary[; it] is a product or fruit of that illegal police conduct.'" (Emphasis added.) *State v. Taylor*, 8th Dist. Cuyahoga No. 94853, 2011-Ohio-1554, ¶30, quoting *State v. Cosby*, 177 Ohio App.3d 670, 2008-Ohio-3862, ¶32 (2d Dist.).

{¶31} It is undisputed that Officer Poe stopped appellee as a result of his failure to make a turn signal. This court has held that an officer's observation of any traffic law violation constitutes sufficient grounds to stop the vehicle observed violating the law. *State v. Howard*, 11th Dist. Lake No. 2009-L-158, 2010-Ohio-2817, ¶17, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996). Since appellee's abandonment of the car was not the product of an illegal stop, his abandonment was voluntary. *Taylor, supra.*

8

**{¶32}** We further note the trial court made no findings regarding abandonment. In such circumstances, we would generally remand to the trial court to make findings. However, the evidence on this issue was undisputed. Also, the court found Officer Poe to be credible because, based on his testimony, the court found that appellee ran away from the car and that appellee did not own it. The officer's unrebutted testimony supports a finding that appellee voluntarily abandoned the car.

**{¶33}** We find the following commentary by the Second District in *State v. Bruce*, 2d Dist. Montgomery No. 14589, 1995 Ohio App. LEXIS 1690 (Apr. 28, 1995), which addressed similar circumstances, to be pertinent and sound:

> **{¶34}** [I]n this case, the trial court made no finding as to whether Bruce "abandoned" the crumpled-up, brown paper bag for purposes of the Fourth Amendment. Ordinarily, we would remand this case to allow the trial court to make that determination. However, we believe that remanding this matter to allow the trial court to determine if Bruce voluntarily abandoned the bag would constitute a gratuitous expenditure of judicial resources. In this case, the evidence showing a voluntary abandonment is both overwhelming and uncontradicted. Furthermore, it is clear from its decision and entry that the trial court found the officers' testimony, including their account of how Bruce threw the bag down, to be credible. The officers' description of how Bruce discarded the bag, which was unrebutted, fully supports a finding that Bruce abandoned the bag voluntarily, and any finding to the contrary, on this record, would have constituted error. *Id.* at *7-*8.

{¶35} For the reasons articulated by the Second District in *Bruce*, a remand for the court to rule on the issue of abandonment in these circumstances would result in a needless waste of judicial resources and would be a vain act because the undisputed evidence could only result in a finding that appellee lacked standing and voluntarily abandoned the vehicle.

{¶36} We therefore hold that, because appellee lacked standing, the trial court erred in addressing the merits of his motion to suppress.

{¶37} The state's second assignment of error is sustained.

{¶38} In light of this court's disposition of the state's second assigned error, its first assignment of error is moot.

{¶39} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with the opinion.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.