[Cite as *State v. Carver*, 2016-Ohio-4926.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-P-0040** |
| MICHAEL A. CARVER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2014 CR 00392.

Judgment: Reversed and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Kristina Drnjevich,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Dennis Day Lager,* Portage County Public Defender, and *Heather R. Ninni,* Assistant Public Defender, 209 South Chestnut Street, Suite 400, Ravenna, OH 44266 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1}  Appellant, Michael A. Carver, appeals from the judgment of the Portage County Court of Common Pleas denying his motion to suppress. For the reasons stated, we reverse and remand.

{¶2}  On August 22, 2013, at approximately 6:30 p.m., Trooper Colin Acciavatti, of the Ohio State Highway Patrol, was traveling westbound on State Route 59. The trooper observed appellant's vehicle pull onto the highway in front of him. The speed

limit at the time the vehicle pulled out was 45 m.p.h. When the speed limit changed to 35 m.p.h., however, the vehicle maintained a speed of 42 m.p.h. The trooper consequently initiated a traffic stop.

{¶3} The trooper approached the vehicle and observed appellant driving with two passengers. Trooper Acciavatti advised appellant the reason for the stop; and appellant acknowledged he was going over the speed limit. The trooper subsequently asked each of the occupants for their identifications. During the exchange, the trooper noted that he, as well as the other occupants of the vehicle, appeared very nervous, hesitating to answer general questions, and failing to make eye contact. Given their unusual level of perceived nervousness, the trooper asked appellant if he had anything illegal or any weapons in the vehicle. Appellant responded in the negative. During his encounter, Trooper Acciavatti did not detect an odor of alcohol or marijuana and did not observe any contraband in the vehicle.

{¶4} Trooper Acciavatti checked appellant's and his passengers' identifications. He noticed nothing problematic. He did, however, observe appellant had "a couple of drug offenses" on his record. The trooper decided to issue appellant a warning; prior to doing so, he determined he would speak with appellant outside the vehicle because, given his prior record and the heightened nervousness of the parties, he had a "suspicion that other things were going on * * *."

{¶5} The trooper returned to the vehicle and asked appellant to step out. Appellant complied and the trooper advised he was giving appellant a warning for the speeding violation; he returned appellant's license then asked him for consent to search the vehicle. Appellant consented, but prior to conducting the search, Trooper Acciavatti

2

requested and received back-up assistance from Kent Police Officer Kathy Glass-Beatty.

{¶6} Once Officer Glass-Beatty arrived, appellant and his passengers were instructed to remain with her while Trooper Acciavatti conducted the search. The search produced two hypodermic needles found in the center console and a small plastic bag with suspected hashish in the windowsill.

{¶7} While waiting with the three men, Officer Glass-Beatty noticed appellant shuffling his feet strangely, attempting to keep one out of view. She notified Trooper Acciavatti who asked appellant to remove his shoe. Appellant did so and, in the shoe, the trooper observed two additional hypodermic needles and a spoon with suspected heroin residue on it.

{¶8} Trooper Acciavatti subsequently asked appellant if he would be willing to accompany him to the patrol post and provide a statement. Appellant agreed and was informed that charges could be filed based upon the lab results. He was then released. Ultimately, the spoon tested positive for heroin and the suspected hashish tested positive for THC, a chemical derivative of marijuana. The needles could not be tested because they did not contain any trace evidence.

{¶9} On June 11, 2014, the Portage County Grand Jury returned an indictment against appellant for one count of possession of heroin, in violation of R.C. 2925.11(A) and (C)(6)(a), a felony of the fifth degree; and one count of possessing drug abuse instruments, in violation of R.C. 2925.12(A)(2), a misdemeanor of the second degree. Appellant pleaded not guilty and filed a motion to suppress the evidence discovered during the search of his vehicle and person. After a hearing on the motion to suppress,

3

appellant filed a motion to reopen the suppression hearing to offer additional evidence. Without ruling on the motion to reopen, the trial court overruled appellant's motion to suppress, concluding appellant voluntarily consented to the search of his vehicle.

{¶10} Notwithstanding the judgment, the state filed a response to appellant's motion to reopen the case. During a subsequent status conference, the trial court orally overruled appellant's motion to reopen, but permitted appellant's counsel to proffer the information at issue on the record. In the proffer, counsel stated the motion to reopen was filed due to information learned regarding an internal investigation by the Ohio State Highway Patrol allegedly relating to the legitimacy of Trooper Acciavatti's probable cause stop, his eventual suspension from the highway patrol, and the potential impact it could have on the trooper's credibility.

{¶11} Appellant subsequently entered a plea of no contest to the two-count indictment and was referred to the Portage County Adult Probation Department for a pre-sentence investigation. On April 27, 2015, appellant was sentenced to a community control sanction under the general control of the Portage County Adult Probation Department in the Intensive Supervision Program for one year and in the General Division Program for an additional year. Execution of the sentence was stayed pending appeal. On appeal, appellant asserts the following two assignments of error:

{¶12} "[1.] The trial court erred to the prejudice of Defendant-Appellant by denying his motion to suppress evidence at trial on the grounds that his detainment, the search of his vehicle, the search of his person, and the resulting seizure of certain evidence incident thereto was in violation of Defendant-Appellant's rights and protections as guaranteed by the Fourth and Fourteenth Amendments to the

4

Constitution of the United States and by Article I, Section 14 of the Constitution of the State of Ohio.

{¶13} "[2.] The trial court erred to the prejudice of Defendant-Appellant by denying, without a hearing, his motion to reopen his case to present additional evidence for his motion to suppress in violation of Defendant-Appellant's rights and protections as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and by Article I, Section 16 of the Constitution of the State of Ohio."

{¶14} In his first assignment of error, appellant argues the trial court erred in denying his motion to suppress. Appellant alleges the court erred in concluding his detention was valid and the subsequent search of his vehicle and person was consensual.

{¶15} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. "An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence." *State v. Warner*, 11th Dist. Portage No. 2013-P-0056, 2014-Ohio-1874, ¶20. Accepting the facts as true, the reviewing court independently determines, as a matter of law and without deference to the trial court's determination, whether its conclusion was consistent with the applicable legal standard. *Id.*

{¶16} In this case, Trooper Acciavatti stopped appellant in the early evening on August 22, 2013 because appellant was driving 42 m.p.h. in a 35 m.p.h. zone. "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment

5

to the United States Constitution * * *." *Dayton v. Erickson*, 76 Ohio St.3d 3, syllabus (1996). Applying the foregoing legal principle to the case at bar, appellant's initial encounter with Trooper Acciavatti was reasonable because the trooper had probable cause to stop appellant and issue him a citation for speeding.

{¶17} The main question here, however, is whether the next encounter with appellant, where Trooper Acciavatti continued the detention, questioned appellant further, and then asked for appellant's consent to search, was reasonable under the circumstances. This court concludes that it was not reasonable.

{¶18} Specifically, after stopping appellant for driving seven miles over the speed limit, Trooper Acciavatti approached the vehicle and observed appellant was driving with two passengers. The trooper advised appellant regarding the reason for the stop and appellant acknowledged he was speeding. The trooper asked appellant if he had any weapons or anything illegal in his car and appellant replied that he did not. The trooper asked each of the occupants for their identifications. They appeared nervous and failed to make eye contact with the trooper. However, appellant and his passengers provided their identifications. The trooper checked the identifications, verified they were valid, indicated there were no outstanding warrants, but said that appellant had a couple of drug offenses on his record. The trooper did not smell any odor of alcohol or marijuana and did not observe any contraband in the vehicle.

{¶19} Thereafter, Trooper Acciavatti asked appellant to step outside the vehicle. "''''(***) Once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.''''" *State v.*

6

*Henderson*, 11th Dist. Lake No. 2006-L-110, 2007-Ohio-2315, ¶27, citing *State v. Wojtaszek*, 11th Dist. Lake No. 2002-L-016, 2003-Ohio-2105, ¶17, quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). Appellant complied with the trooper's request and exited his vehicle. The trooper told appellant he was giving him a warning for the speeding violation. About 30 minutes had elapsed from the initial time of the stop to the warning for speeding.

{¶20} Instead of just issuing the warning and allowing appellant to go on his way, however, the trooper continued the detention for about another half hour and questioned appellant further even though there was no ongoing criminal activity that the trooper could observe. The trooper merely believed that appellant may have been involved in something else and wanted to see what he could find through a search. This court finds that the trooper did not have a sufficient, reasonable basis to expand the detention due to appellant's and his passengers' nervousness, avoidance of eye contact, and appellant's prior record of drug offenses.

{¶21} As the Second Appellate District stated in the case of *State v. Retherford*, 93 Ohio App.3d 586, 600 (2nd Dist.1994): "'"(T)he mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer 'open season' to investigate matters not reasonably within the scope of his suspicion."'" *Henderson, supra,* at ¶29.

{¶22} Instead of simply warning appellant or handing him a citation for speeding and sending him on his way, Trooper Acciavatti pursued the encounter and continued with questioning until he received appellant's consent to search. A search of appellant's vehicle and his person produced hypodermic needles and drugs. This court finds a

7

reasonable person would not perceive that he was free to go after the trooper moved into his next round of questioning. *See Henderson, supra,* at ¶30.

{¶23} Based on the facts presented, the consent to search cannot be considered voluntary. Although appellant told the trooper to go ahead and search his vehicle, the consent to search was already tainted by the lack of specific and articulable facts or a reasonable suspicion of any ongoing criminal activity. *See id.* at ¶31. Thus, appellant's consent was not effective to legitimize a detention that was already unlawful and unreasonable. *See id.* As such, appellant's consent was invalid. "'(A) "valid consent cannot be given following an illegal detention to which it is strongly connected, and that evidence uncovered as a result of such a search must be suppressed as fruit of the poisonous tree."'" *Id.* at ¶32, quoting *State v. Pinder*, 2d Dist. Miami No. 93 CA 6, 1993 Ohio App. LEXIS 5972, *13 (Dec. 15, 1993).

{¶24} Accordingly, the trial court erred in denying appellant's motion to suppress.

{¶25} Appellant's first assignment of error is with merit.

{¶26} In his second assignment of error, appellant contends the trial court erred by denying without a hearing his motion to reopen his case to present additional evidence for his motion to suppress.

{¶27} Based on this court's disposition in appellant's first assignment of error, we determine appellant's second assignment to be moot. *See* App.R. 12(A)(1)(c).

8

{¶28} For the foregoing reasons, appellant's first assignment of error is well-taken and his second assignment of error is moot. The judgment of the Portage County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this opinion.

TIMOTHY P. CANNON, J., concurs in judgment only with a Concurring Opinion.

CYNTHIA WESTCOTT RICE, P.J., dissents with a Dissenting Opinion.

_____

TIMOTHY P. CANNON, J., concurring in judgment only.

{¶29} I concur in the judgment that the contraband in question was obtained in the course of a search that violated appellant's rights under the U.S. and Ohio Constitutions. I write separately for the following reasons.

{¶30} First, there are several critical factors I do not believe were addressed by the lead opinion. The trooper testified that at the time of this stop he had been on the road on his own for approximately six weeks. He was following appellant in a 45 m.p.h. zone. The speed limit changed from 45 m.p.h. to 35 m.p.h., and the officer "pace clocked" appellant for a short distance. The officer stopped appellant for travelling 42 m.p.h. in a 35 m.p.h. zone. There was no testimony establishing the officer's training or experience with "pace clocking." In any event, this can hardly be described as a significant offense and is rarely seen as worthy of issuing a citation. Indeed, there is no indication here that the trooper *ever* intended to issue a citation.

{¶31} Second, I write to expand on the case law stated in the lead opinion regarding the standard for prolonging a detention. In *State v. Eggleston*, this court stated:

> On that issue, '[t]he pivotal inquiry * * * is whether [the officer] was justified in his continued detention of appellant. Once the suspicion which gave rise to the initial stop evaporated, any additional intrusion or detention had to have been supported by specific and articulable facts demonstrating the reasonableness of the continued detention.'

*State v. Eggleston*, 11th Dist. Trumbull No. 2014-T-0068, 2015-Ohio-958, ¶23, quoting *State v. Colby*, 11th Dist. Portage No. 2002-P-0061, 2004-Ohio-343, ¶22, citing *State v. Chatton*, 11 Ohio St.3d 59, 63 (1984); *see also State v. White*, 8th Dist. Cuyahoga No. 100624, 2014-Ohio-4202, ¶17 ("[T]he officer must limit both the scope and duration of the stop to the matter at hand, namely, writing the citation, and any expanded investigation unrelated to the traffic violation must be based upon reasonable articulable suspicion."). "If the officer does encounter additional articulable facts that give rise to a reasonable suspicion of criminal activity, beyond that which prompted the stop, the officer may lengthen the duration of the stop to investigate these suspicions." *Eggleston* at ¶23, citing *Colby* at ¶25; *State v. Brooks*, 3d Dist. Hancock No. 5-11-11, 2012-Ohio-5235, ¶27; and *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶15.

{¶32} Additionally, in *Rodriguez v. United States*, the United States Supreme Court recently explained:

> Authority for the seizure ends when tasks tied to the traffic infraction are--or reasonably should have been--completed. The Fourth Amendment may tolerate certain unrelated investigations that do not lengthen the roadside detention [e.g., questioning, dog sniff], but a traffic stop 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket.

10

*Rodriguez v. United States*, __ U.S. __, 135 S.Ct. 1609, 1611 (2015), quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

{¶33} Here, the trooper had already informed appellant he was giving him a warning for the speed violation, but instead of letting him go, he asked appellant to get out of the car so he could talk to him "away from the passengers." Asking him to get out of the car so he could give him a warning ticket clearly constituted prolonging the stop beyond the time it would have taken him to simply give appellant the warning ticket. There was no need whatsoever to do this "away from the passengers."

{¶34} In support of prolonging the detention, the trooper described appellant as looking away and exhibiting "all around nervousness." Then he testified that these are "nothing on their own, but when you put them together" it is an indication of criminal activity. He also testified that it is normal for a driver who is stopped to act nervous. These two things—the driver appearing nervous and avoiding eye contact by looking away—do not by themselves amount to a reasonable, articulable suspicion of criminal activity. *See, e.g.*, *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, ¶28 (holding that a prolonged detention based on nervousness, furtive glances, and failure to make eye contact was the officer simply "'fishing' for evidence of a crime").

{¶35} But the trooper did not stop there. He then asked if there were any weapons in the car, and appellant said no. He asked if there were any drugs in the vehicle, and appellant responded there were no "illegal items" in the car. The trooper then testified: "At this time, I asked for another unit to come to my location where I could, ah – Um, so, a Kent PD officer arrived at the scene." He testified they waited

approximately 30 minutes for her to arrive. From his testimony, it appears it was only *after* he summoned a back-up officer that he asked appellant for consent to search the vehicle.

{¶36} Based on the totality of the circumstances, the trooper did not have a reasonable, articulable suspicion of criminal activity to justify prolonging the detention.

{¶37} For the foregoing reasons, I agree the judgment denying appellant's motion to suppress should be reversed. The sole evidence upon which appellant's convictions were based should have been suppressed, and therefore the judgment of conviction should be vacated. The matter should be remanded solely for the trial court to carry this judgment into execution.

_____

CYNTHIA WESTCOTT RICE, P.J., dissents with a Dissenting Opinion.

{¶38} The majority concludes the extended detention and subsequent search of appellant's vehicle were neither supported by reasonable suspicion nor a product of appellant's voluntary consent. I respectfully disagree with the majority's disposition and dissent on this issue.

{¶39} As a general matter, "'[a]n officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot.'" *State v. Carter*, 11th Dist. Portage No. 2003-P-0007, 2004- Ohio-1181, ¶34, quoting *State v. Retherford*, 93 Ohio App.3d 586, 600 (2d Dist.1996).

12

**{¶40}** If an officer does not develop reasonable suspicion to justify further detention of an individual, any further detention is unlawful. "Voluntary consent, [however,] determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *State v. Robinette*, 80 Ohio St.3d 234, 241 (1997), citing *Davis v. United States*, 328 U.S. 582, 593-594 (1946). For consent to be valid under the constitution, the state must establish the consent was voluntary and not the product of duress or coercion, express or implied. *Robinette*, *supra*, at 242, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-249 (1973). "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id.*

**{¶41}** The trial court premised its judgment denying appellant's motion to suppress upon the voluntariness of appellant's consent. The majority concludes that the trooper did not have reasonable suspicion to expand the detention and that appellant's subsequent consent to the search was not voluntary. Because I would hold the trial court properly found appellant's consent was voluntary, I do not think it is necessary to reach the first issue. I will therefore concentrate on the issue of appellant's consent.

**{¶42}** First of all, in arriving at its disposition, the lead opinion asserts that, in lieu of issuing a warning and sending appellant on his way, the trooper "continued with questioning until he received appellant's consent to search. The record does not support this point.

13

{¶43} The evidence demonstrates that Trooper Acciavatti, after checking each party's identification and concluding neither appellant nor his passengers had any outstanding warrants or other problems justifying further detention, returned to the vehicle and asked appellant to exit the car. Trooper Acciavatti testified he requested appellant to exit the vehicle to speak to him separately from the passengers and issue him the warning. The trooper testified this occurred approximately 30 minutes into the stop. The trooper did not ask appellant a series of questions prior to seeking consent to search. To the contrary, the trooper advised appellant he was issuing him a warning; returned his license; and then asked for consent to search.

{¶44} The lead opinion maintains the consent to search was not voluntary because it was tainted by the lack of specific and articulable facts of criminal activity. In effect, the lead opinion maintains appellant's consent did not, under these circumstances, legitimize the already unlawful detention to which it was "strongly connected." In support, the lead opinion cites *State v. Henderson*, 11th Dist. Lake No. 2006-L-110, 2007-Ohio-2315.

{¶45} In *Henderson*, the defendant was pulled over for having expired license plates. Upon approaching the defendant, the arresting officer noticed a pill bottle in the car, an in-car television, multiple air fresheners on the rear-view mirror, a bottle of cologne, multiple cell phones, as well as a considerable amount of jewelry on appellant's person. He also observed that the vehicle had air shocks that were filled to the maximum, raising up the back end of the vehicle. Testimony indicated air shocks are useful if one desires to conceal weight in the trunk of the car. The officer noted, from his training and experience, substances with strong aromas are used to mask the smell

14

of drugs. Finally, he testified that, in his experience, persons who transport drugs often have weapons close at hand.

{¶46} The officer wrote a citation for the expired plates and returned to the defendant's vehicle. He asked the defendant to exit the car, gave him the citation, and told him he was free to go. Thereupon, the officer asked the defendant: "[w]ould it be okay if I asked you a question?" The defendant answered in the affirmative. The officer then asked him about a temporary protection order issued against him, to which the defendant provided a vague answer. Then the officer asked the defendant about his prior drug use, and the defendant replied that he had used crack cocaine when he was younger and that he had been in recovery for a number of years. The officer further asked whether the defendant had any drugs on his person or in the car, to which the defendant replied in the negative. The officer then asked for permission to search inside the vehicle. The defendant replied, "go ahead." It was during a search of the vehicle that the officer discovered a .25-calibre handgun. The trial court ultimately denied the defendant's motion to suppress.

{¶47} On appeal, this court reversed the trial court's judgment. This court noted that at the time the defendant was asked to exit his vehicle, the officer could reasonably have been observing a drug user or a drug dealer. "Based upon his training and experience, either of these conclusions based upon his observations would have been reasonable." *Id.* at ¶26. The officer's continued detention of the defendant after he was "free to go," however, required the existence of reasonable suspicion of ongoing criminal activity. *Id.* at ¶28. At the time the officer told the defendant he was "free to

15

go," this court concluded, there was no ongoing criminal activity that the officer could observe. *Id.* This court therefore held:

> "When [the defendant] told [the officer] to 'go ahead' and search the vehicle, the consent to search was already tainted by the lack of specific and articulable facts or a reasonable suspicion of any ongoing criminal activity. [The officer] did not possess such specific and articulable facts as of the time he told [the defendant] he was 'free to go.' Therefore, [the defendant's] consent was not effective to legitimize a detention that was already unlawful and unreasonable." *Id.* at ¶31.

{¶48} The circumstances of the underlying matter differ from those in *Henderson*.

{¶49} In this case, the trooper, after checking appellant's and his passengers' identification, returned to the vehicle, asked appellant to exit, and indicated he would be giving him a warning. Although the trooper did not explicitly state appellant was free to go, once the warning was issued, the detention for purposes of the traffic stop was legally over and the lawful basis for detaining appellant ended. The trooper immediately, without asking any tangential autobiographical questions about appellant's criminal history or drug use, simply requested consent to search the vehicle. Appellant agreed without question.

{¶50} There is nothing in the record to indicate appellant's will was somehow overborne by any coercion or threat. To the contrary, after issuing the warning and returning appellant's license, the trooper testified he stated to appellant, "I was wondering if you'd be willing to give consent to search your vehicle." The question, while direct, was a polite request that gave appellant the option of refusal. We discern nothing in the question or the circumstances of the question that would suggest appellant was merely submitting to the trooper or that the trooper was attempting to

16

force appellant's consent under the color of lawful authority. Appellant's consent reflects an independent act of free will, unburdened by any overt or implicit pressure on the trooper's behalf. Accordingly, even assuming the expanded detention was unlawful, appellant's voluntary consent was sufficient to validate the search. *See Robinette*, *supra*, at 241. ("[v]oluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search."). I would therefore hold the trial court did not err in overruling appellant's motion to suppress evidence. Given this conclusion, it is necessary to address appellant's second assignment of error. It provides:

{¶51} "The trial court erred to the prejudice of defendant-appellant by denying without a hearing, his motion to reopen his case to present additional evidence for his motion to suppress in violation of defendant-appellant's rights and protections as guaranteed by the Fifth and Fourteenth Amendment to the constitution of the United States and by Article I, Section 16 of the Constitution of the state of Ohio."

{¶52} Appellant asserts the trial court abused its discretion in overruling his motion to reopen without a hearing. Because the information proffered by defense counsel may have profoundly affected the trooper's credibility, I would hold the trial court acted unreasonably in denying the motion without a specified, substantive justification. For the following reasons, however, I would hold any error in denying the additional evidence is harmless.

{¶53} Appellant filed a motion to reopen after the suppression hearing. The court denied his motion. The trial court did not specifically address the basis of the motion in its judgment denying the motion. During a subsequent status hearing, however, the trial

judge, a different judge than the trial judge who presided over the suppression hearing, orally overruled appellant's motion to reopen. In doing so, the trial judge stated that, even though the prior judge did not expressly rule upon the motion, the motion was filed prior to his ruling on the substance of the motion to suppress. Hence, the trial judge determined, if the prior judge intended on sustaining the motion, he would have stated so in the entry. He did not do so and, as a result, the trial court concluded she would not disturb that decision. The trial judge nevertheless permitted appellant's counsel to proffer the information upon which the motion was premised on record.

{¶54} According to counsel's proffer, Trooper Acciavatti had been recently suspended by the Highway Patrol and an investigation had been initiated due to certain alleged perjured testimony he provided to a grand jury relating to probable cause to stop a motorist. Counsel maintained this information was critical to the credibility of the trooper's testimony and should be considered by the court in determining whether there was probable cause in the instant case.

{¶55} The foregoing information, if accurate, would militate against the trooper's credibility and was obviously germane to facts of consequence, i.e., whether the trooper's alleged suspicion was reasonable, given the circumstances of the encounter, and whether his articulated bases were sufficiently believable. Still, because appellant's voluntary consent, on which the trooper's credibility has no bearing, was dispositive of the legality of the search, any error in failing to allow the additional evidence was harmless.

{¶56} Appellant next contends that the trial court erred by failing to enter an actual judgment on record denying his motion to reopen. He contends, pursuant to

18

Crim.R. 32(C), a judgment in a criminal case "is effective only when entered on the journal by the clerk."

{¶57} Crim.R 32 specifically addresses sentences in criminal cases. Crim.R. 32(C) mandates that a judgment *of conviction* "is effective only when entered on the journal by the clerk." In this case, the trial court, at the status conference specifically stated that it was overruling appellant's motion to reopen, even if it was not already clear, by operation of the judgment denying the motion to suppress, it had been implicitly overruled. Under these circumstances, I discern no error in the trial court's oral ruling on the motion at issue.

{¶58} I would hold appellant's second assignment of error lacks merit.

{¶59} For the foregoing reasons, I would affirm the judgment of the trial court. I accordingly dissent.