[Cite as *State v. Nasca*, 2016-Ohio-8223.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-A-0026** |
| RITCH NASCA, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Ashtabula County Court, Eastern District, Case No. 2015 CRB 00502E.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellant).

*Katherine S. Riedel,* Law Offices of Katherine S. Riedel Co., L.P.A., Jefferson Commercial Park, 1484 State Route 46 North, No. 5, Jefferson, OH 44047 (For Defendant-Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, the state of Ohio, appeals from the March 21, 2016 judgment of the Ashtabula County Court, Eastern District, granting appellee's, Ritch Nasca, motion to suppress as to obstructing official business and dismissing that charge. For the reasons stated, we affirm.

{¶2} On October 5, 2015, a criminal complaint was filed against Mr. Nasca charging him with one count of obstructing official business, a misdemeanor of the second degree, in violation of R.C. 2921.31(A), and one count of resisting arrest, a misdemeanor of the second degree, in violation of R.C. 2921.33(A). Mr. Nasca pleaded not guilty to both charges and waived his right to a speedy trial.

{¶3} On February 10, 2016, Mr. Nasca filed a motion to suppress. He alleged that his seizure was not supported by specific and articulable facts, his arrest for obstructing official business was not supported by probable cause, and his Fourth Amendment rights were violated. The state filed a response in opposition two weeks later.

{¶4} A suppression hearing was held on March 21, 2016. At the hearing, Deputy Mark Mullet, with the Ashtabula County Sheriff's Department, testified for the state that he was working the midnight shift on October 4, 2015. Deputy Mullet, and other officers, received a dispatch for a residence located at 2878 Maple Road, Sheffield Township, Ashtabula County, Ohio. An anonymous informant alleged that Mr. Nasca's adult son, Christopher, was in possession of a firearm and was threatening suicide. Deputy Mullet attempted to make telephone contact with any occupants of that residence but was unsuccessful.

{¶5} It was revealed that Mr. Nasca was the owner of the residence at issue. Deputy Mullet had been to the home on prior occasions. He was aware that Mr. Nasca used the garage to enter the residence which was guarded by large dogs. Deputy Mullet yelled from outside of the garage that he was there. However, no one came outside at that time.

{¶6} Deputy Mullet then knocked on the front door. After waiting two to three minutes, Mr. Nasca responded. Deputy Mullet told Mr. Nasca through the closed door that he was there to check on Christopher. Mr. Nasca said he believed his son was downstairs. Deputy Mullet observed Mr. Nasca go down a set of stairs. Mr. Nasca did not immediately return and Deputy Mullet began knocking on the front door again.

{¶7} About five minutes later, Mr. Nasca came outside, put his dogs away, and spoke with the officers inside the garage. Deputy Mullet asked Mr. Nasca why it took him so long to return. Mr. Nasca did not provide a straight answer. They continued conversing. Mr. Nasca became upset, turned to walk inside the house, and told the officers to come back with a warrant.

{¶8} Deputy Mullet stopped Mr. Nasca, grabbed his wrist, and advised him that he was going to detain him due to the severity of the investigation, i.e., that the officers believed Mr. Nasca was in danger due to the report that a suicidal person with a gun was inside the residence. Mr. Nasca pulled away from the officer. Deputy Mullet told him he was under arrest for obstructing official business. Deputy Mullet indicated Mr. Nasca did not submit to the arrest.

{¶9} Rather, Deputy Mullet testified that Mr. Nasca turned, bladed his body, and took a "fighting stance." Deputy Pinney, another officer at the scene, assisted Deputy Mullet in taking Mr. Nasca to the ground while he continued to struggle and pull away, thereby resulting in him being charged with resisting arrest. Mr. Nasca was eventually handcuffed and placed in a patrol car.

{¶10} During the struggle with Mr. Nasca, another male appeared in the garage. Sergeant Niemi, another officer at the scene, observed the individual run inside the

3

house. The sergeant ordered the person to stop but he failed to comply. The officers assumed the individual was Christopher and they entered the house. In the basement, the officers observed an open sliding glass door. Neither Christopher nor any firearms were located inside the residence. Christopher was discovered in a field of tall grass behind the home. Deputy Mullet testified that Christopher admitted to having been in possession of an unloaded firearm but denied any contemplation of suicide. No firearm was ever located.

{¶11} On cross-examination, Deputy Mullet testified that the anonymous informant called from outside of Ashtabula County. The anonymous call, therefore, did not come from Mr. Nasca's residence. The caller did not say he or she was with Christopher at the home. Deputy Mullet stated the purpose of the investigation and converging on Mr. Nasca's residence was solely to investigate a suicide threat and that no one at the home was under suspicion of any criminal activity. During the time at Mr. Nasca's residence, the officers saw no signs that the residents had engaged in a struggle, saw no visible blood anywhere, and heard no calls for help or any gunshots.

{¶12} On redirect examination, Deputy Mullet indicated the officers later learned that the man that ran into the residence from the garage was not Christopher, but rather another individual by the name of Ryan Miller.

{¶13} Following the hearing, the trial court overruled Mr. Nasca's motion to suppress as to resisting arrest but granted the motion as to obstructing official business and dismissed that charge. The state filed a timely appeal and asserts the following assignment of error:[1]

---

1. The trial court stayed all further proceedings on the resisting arrest charge pending the state's appeal and this court's decision on the obstructing official business charge.

4

**{¶14}** "The trial court erred in granting appellee's motion to suppress."

**{¶15}** The state takes issue with the trial court's granting of Mr. Nasca's motion to suppress as to obstructing official business and dismissal of that charge. It is undisputed that no one at Mr. Nasca's household was under suspicion of any criminal activity during the officers' investigation of his son's alleged suicide threat which was reported by an anonymous informant. The state's main argument to justify the warrantless seizure and arrest of Mr. Nasca is that the officers' action falls under exigent circumstances and/or the community caretaking exception to the warrant requirement.

**{¶16}** Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. "An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence." *State v. Warner*, 11th Dist. Portage No. 2013-P-0056, 2014-Ohio-1874, ¶20. Accepting the facts as true, the reviewing court independently determines, as a matter of law and without deference to the trial court's determination, whether its conclusion was consistent with the applicable legal standard. *Id.*

**{¶17}** The Fourth Amendment to the United States Constitution provides:

**{¶18}** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

5

**{¶19}** There are a number of exceptions to the Fourth Amendment warrant requirement, including the community-caretaking exception, also referred to as the "emergency-aid exception" or "exigent-circumstance exception." *See State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, ¶15.

**{¶20}** In this case, following the suppression hearing, the trial judge made the following observations from the bench:

**{¶21}** "First of all, the Defendant is the father of Christopher, and it seems to me that while there may have been reasonable concerns on the part of the officer or officers at the outset, I think the Court is very mindful of the fact that they spoke to Christopher's father, who lives at that residence, and the father went back into the house and was gone for three to five minutes.

**{¶22}** "Now, to me, that three to five-minute delay works against the State, because I'm going to - - I think I'm entitled to assume that the father was looking into the situation himself and was able to make a determination that there was no danger to his son, Christopher, for whatever reasons he decided to rely upon.

**{¶23}** "And there's no evidence that Defendant was impaired or unable to make rational judgments, so when the officer went to the door and the father takes it upon himself to look around the house and apparently is unconcerned himself, to me, that dissipates the existence of an emergency or other so-called exigent circumstances. I think those exigent circumstances for the emergency situation went away, after the father had a chance to investigate.

**{¶24}** "And I think that in this matter, there's, from the evidence, I'd find that there was too much speculation on the part of the arresting officers in this case as to what was going on with Christopher or what wasn't.

**{¶25}** "* * *

**{¶26}** "So at any rate, I think that the action of arresting the Defendant or seeking to arrest the Defendant for obstruction is excessive and unwarranted and was not justified by the fact pattern we have before us." (Suppression Transcript pp. 36-39).

**{¶27}** This court accepts the trial court's findings as they are supported by competent, credible evidence. Based upon our independent review of the record, we also determine that the obstructing official business charge against Mr. Nasca is excessive and unwarranted based on the facts presented in this case. The circumstances here, when viewed objectively, do not justify the officers' continued actions. *See, e.g., State v. Minear*, 191 Ohio App.3d 774, 2010-Ohio-6577, ¶39 (11th Dist.) (the emergency aid exception involves an objective standard and does not depend on an officer's subjective intent).

**{¶28}** As stated, officers were dispatched to Mr. Nasca's residence based upon an anonymous call from an out-of-county informant that his son, Christopher, was alleged to have been contemplating suicide. Ohio courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. *See Maumee v. Weisner*, 87 Ohio St.3d 295, 300 (1999). The anonymous call did not come from Mr. Nasca's residence. The anonymous informant did not say he or she was with Christopher at the home. The call

was not from someone at the residence who saw Christopher with a gun. Thus, unlike a citizen informant or a known informant, this anonymous informant, based upon the facts in this case, was comparatively unreliable.

{¶29} Nevertheless, the officers received the call and diligently performed their duties in going to the residence in order to assist anyone in distress and to maintain public safety. Deputy Mullet stated the purpose of the investigation and converging on Mr. Nasca's home was solely to investigate a suicide threat and that no one at the home was under suspicion of any criminal activity. We find the officers were certainly justified in going to Mr. Nasca's residence and knocking on his door due to the alleged suicide threat.

{¶30} However, the record reveals the officers became mainly concerned that Christopher might flee the residence and/or that Mr. Nasca may have assisted him in fleeing. During the initial investigation at Mr. Nasca's residence, there were no signs that anyone was in danger. There were no signs that the residents had engaged in a struggle. There was no visible blood anywhere. The officers heard no calls for help or any gunshots. In fact, when Deputy Mullet spoke with Mr. Nasca through the front door upon his arrival, Mr. Nasca did not seem at all concerned about Christopher. And Mr. Nasca went to check on his son. There was no evidence that Mr. Nasca appeared to be in any immediate danger. At that point in time, the record fails to reveal an emergency or any immediate need to provide medical attention.

{¶31} Accordingly, based on the facts presented, although the officers had a duty and were initially justified in going to Mr. Nasca's residence to investigate the alleged suicide threat, they were not later justified in seizing Mr. Nasca and restraining

8

him from re-entering his home.  The trial court did not err in granting Mr. Nasca's motion to suppress as to obstructing official business and dismissing that charge.

{¶32}  For the foregoing reasons, appellant's sole assignment of error is not well-taken.  The judgment of the Ashtabula County Court, Eastern District, is affirmed.


CYNTHIA WESTCOTT RICE, P.J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only.